**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

J-E-R-P-,[1]

      Petitioner,

v.                                                              No. 2:26-cv-00791-MLG-KK

DORA CASTRO, Warden, Otero County
Processing Center; JOEL GARCIA, Field
Office Director, El Paso Field Office; TODD
LYONS, Acting Director, United States
Immigration Customs Enforcement; KRISTI
NOEM, Secretary of Homeland Security; and
PAMELA BONDI, Attorney General of the
United States, *in their official capacities*,

      Respondents.

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS AND
DIRECTING RESPONDENTS TO IMMEDIATELY RELEASE PETITIONER**

J-E-R-P-, a citizen of Guatemala, has been detained by federal immigration authorities

since October 31, 2025, and is currently being held at the Otero County Processing Center in

Chaparral, New Mexico. Doc. 7 at 5. He challenges his continued detention and seeks a writ of

habeas corpus under 28 U.S.C. § 2241 directing federal immigration authorities to immediately

release him from custody and return his property, as well as prohibiting them from re-detaining

him without advance notice to the Court. *Id.* at 18. The Court ordered the United States Attorney's

Office for the District of New Mexico ("USAO") to respond to J-E-R-P-'s Verified Petition for a

Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 ("Petition"), Doc. 7, on behalf of Federal

---

[1] The Court granted J-E-R-P-'s request to proceed by pseudonym in the Court's March 27, 2026,
Order to Show Cause. *See* Doc. 6 at 1-2.

1

Respondents[2] within ten business days. *See* Doc. 6 at 3-4. The USAO timely filed a response, arguing that the Court should dismiss the Petition for lack of subject matter jurisdiction or, in the alternative, deny the Petition because J-E-R-P- is properly detained under 8 U.S.C. § 1225(b) and received adequate process.[3] Doc. 9 at 3, 10-12. Neither argument is meritorious. For the following reasons, the Court grants the Petition.

J-E-R-P- entered the United States with his minor son on September 9, 2023, after several of their family members were murdered and violently attacked in Guatemala. Doc. 7 at 2-3, 10. After being temporarily detained, J-E-R-P- and his son were released by federal immigration authorities on their own recognizance pursuant to 8 U.S.C. § 1226(a). Doc. 7 at 6, 10-11; *see also* Doc. 12-2 at 2 ("Order of Release on Recognizance"). The Department of Homeland Security ("DHS") did not pursue removal proceedings against J-E-R-P- until after he was re-detained on October 31, 2025, without any notice or pre-deprivation hearing. *Id.* at 2-3, 11, 13-14. J-E-R-P- alleges that federal immigration authorities' arrest quotas are the only reason he was re-detained. *Id.* at 13-14. Prior to his re-detention, DHS granted J-E-R-P- work authorization through 2030. *Id.* at 12. On March 2, 2026, J-E-R-P-'s asylum application was denied and he was ordered removed. *Id.* at 15. The parties agree that his removal order is not yet final because J-E-R-P- appealed the order to the Board of Immigration Appeals ("BIA") and that appeal is still pending. *Id.*; Doc. 9 at 3.

---

[2] The Court uses "Federal Respondents" to refer to all Respondents in this matter other than Dora Castro, Warden of the Otero County Processing Center.

[3] The USAO's response also argues that Petitioner's Administrative Procedure Act ("APA") argument fails to state a claim for which relief may be granted. *See* Doc. 9 at 11-12. The Court does not address this dispute as it is not necessary to the disposition.

As a threshold matter, the Court must address Federal Respondents' concern regarding subject matter jurisdiction. Federal Respondents present a cursory argument that "judicial review of the §1225(b)(1) determination itself" is "outside the scope of judicial review" under 8 U.S.C. § 1252(e). Doc. 9 at 10 (citing *Vaupel v. Ortiz*, 244 F. App'x 892 (10th Cir. 2007)). This is a misstatement of *Vaupel*, which held that "review of [an] expedited removal order [is] beyond the limited scope of review permitted in habeas corpus proceedings by § 1252(e)[.]" *Vaupel*, 244 F. App'x at 896. But as J-E-R-P- points out in his response, he is not seeking this Court's review of his removal order. Doc. 10 at 5-6. He is instead challenging the constitutionality of his continued detention while his appeal of his removal order is pending before the BIA. *See generally* Doc. 7; Doc. 12-3 at 2-4 (indicating the BIA's receipt of J-E-R-P-'s appeal). Federal Respondents do not cite any other legal authority in support of their argument, and the Court is unaware of any such authority. The Court concludes it has jurisdiction to review the Petition. *See, e.g.*, *Ceesay v. Kurzdorfer*, 781 F. Supp. 3d 137, 153 (W.D.N.Y. 2025) (explaining that, because the immigration habeas petitioner did "not challenge ICE's ability to remove him but only the legality of his current detention, . . . section 1252 . . . [did] not bar [the] Court from exercising jurisdiction"); *Maldonado v. Olson*, 795 F. Supp. 3d 1134, 1142-47 (D. Minn. 2025) (explaining that the court had jurisdiction to entertain the immigration habeas petitioner's constitutional challenge to her *detention*).

Turning to the merits, J-E-R-P- argues that federal immigration authorities' decision to release him on his own recognizance in September 2023 necessarily involved a factual determination that he was neither a flight risk nor a danger to the community. *See* Doc. 7 at 7, 16; Doc. 10 at 9; *see also* 8 C.F.R. § 1236.1(c)(8) (explaining that a noncitizen may be released if they "demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the [noncitizen] is likely to appear for any future proceeding"). According to

3

J-E-R-P-, considerations material to his conditional parole[4] have not changed. *See* Doc. 7 at 17. Federal Respondents do not suggest otherwise. *See generally* Doc. 9. Because he did not receive a pre-deprivation hearing or any other process before being re-detained, J-E-R-P- argues that his due process rights under the Fifth Amendment were violated and that he is entitled to immediate release. Doc. 7 at 17; Doc. 10 at 10-12. Federal Respondents argue that J-E-R-P- is properly detained pursuant to § 1225. Doc. 9 at 10-11. They also suggest that J-E-R-P-'s parole was revoked and that immediate release would be contrary to § 1226(c). *Id.* at 11.

The Order of Release on Recognizance issued by DHS to J-E-R-P- confirms that his release in September 2023 was authorized pursuant to "section 236 of the Immigration and Nationality Act[,]" which is codified at 8 U.S.C. § 1226. *See* Doc. 12-2 at 2. As such, J-E-R-P-'s detention is governed by § 1226(a), not § 1225(b). *See, e.g.*, *Ramirez-Gavilan v. Collins*, No. 1:25-CV-2052-RP, 2026 WL 274705, at *5 (W.D. Tex. Jan. 17, 2026) ("[T]he government has already treated Petitioner as subject to § 1226 when they paroled him under that provision—a form of parole that would not have been possible if he was being detained subject to § 1225. That alone would be sufficient to say that Petitioner is wrongfully detained under § 1225 now."). To the extent Federal Respondents suggest that J-E-R-P-'s detention is governed by § 1225(b) because his conditional parole was revoked, *see* Doc. 9 at 11, they do not provide any evidence that his parole was revoked prior to his re-detention. The Notice to Appear attached to the USAO's response that charges J-E-

---

[4] Release on recognizance is a form of conditional parole authorized by § 1226. *See Ortega-Cervantes v. Gonzales*, 501 F.3d 1111, 1115 (9th Cir. 2007) (explaining that the federal government "use[s] the phrase 'release on recognizance' as another name for 'conditional parole' under § 1226(a)"); *Gomes v. Hyde*, 804 F. Supp. 3d 265, 269 (D. Mass. 2025) ("[T]he government may release a noncitizen detained under Section 1226(a) on an Order of Recognizance, which is a form of conditional parole").

R-P- as being inadmissible was issued on November 18, 2025—nearly three weeks *after* J-E-R-P- was re-detained. *See* Doc. 7 at 14; Doc. 9-1 at 1-3.

Noncitizens released from immigration custody, like J-E-R-P-, have a liberty interest in remaining free. *See, e.g.*, *Pablo Sequen v. Albarran*, 806 F. Supp. 3d 1069, 1082 (N.D. Cal. 2025) ("Even when the government has discretion to detain an individual, its subsequent decision to release the individual creates 'an implicit promise' that [they] will be re-detained only if [they] violate[] the conditions of [their] release." (quoting *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972))), *appeal filed sub nom.*, *Garcia v. Albarran*, No. 25-7868 (9th Cir. Dec. 16, 2025). Under similar facts, the Court has addressed what process is "necessary to ensure any deprivations of that protected liberty interest accords with the Constitution." *See, e.g.*, *Diallo v. Orozco*, No. 2:26-cv-00066-MLG-JHR, 2026 WL 608746, at *3 (D.N.M. Mar. 4, 2026) (internal quotation marks omitted) (quoting *Garcia Domingo v. Castro*, 806 F. Supp. 3d 1246, 1252 (D.N.M. 2025)). The *Mathews v. Eldridge*[5] balancing test guides this analysis. *See Diallo*, 2026 WL 608746, at *3-4. As in *Diallo*, the Court concludes that due process demands that J-E-R-P- receive a pre-deprivation hearing because (1) J-E-R-P- has a clear liberty interest in remaining out of custody; (2) the risk of erroneous deprivation under the procedures used here is high, and the probable value of additional procedural safeguards is considerable, given that J-E-R-P- was re-detained despite Federal Respondents' failure to provide any valid legal basis to justify his civil detention; and (3) Federal Respondents' interest in detaining J-E-R-P- is low because they have already determined that he is neither a flight risk nor a danger to the community, and the cost of a pre-deprivation hearing is minimal. *See id.*; *see also Pablo Sequen*, 806 F. Supp. 3d at 1082-90.

---

[5] 424 U.S. 319, 335 (1976).

Because J-E-R-P- did not receive a pre-deprivation hearing, *see* Doc. 7 at 14, 16, his detention is an ongoing violation of his right to due process. *See Reno v. Flores*, 507 U.S. 292, 306 (1993) ("It is well established that the Fifth Amendment entitles [noncitizens] to due process of law in deportation proceedings."); *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) ("[O]nce [a] [noncitizen] enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent."). Accordingly, J-E-R-P- must be immediately released.[6] *See, e.g.*, *Munaf v. Geren*, 553 U.S. 674, 693 (2008) ("The typical remedy for [unlawful executive] detention is, of course, release."). The Court rejects Federal Respondents' assertion that such relief is "contrary to law" because this assumes that J-E-R-P- is being detained pursuant to § 1226(c), *see* Doc. 9 at 11, which they never argue. *See generally* Doc. 9 (arguing throughout that J-E-R-P- is detained pursuant to § 1225(b)).

Additionally, the Court will consider J-E-R-P-'s request for attorney's fees and costs under the EAJA. *See* Doc. 7 at 19; *Delay v. Ceja*, 158 F.4th 1152, 1166 (10th Cir. 2025) ("[W]e read the

---

[6] Although there are circumstances in which "a meaningful postdeprivation hearing is adequate" to satisfy due process, the USAO does not argue that this case presents such a situation. *See generally* Doc. 9; *see Clark v. City of Draper*, 168 F.3d 1185, 1189 (10th Cir. 1999) ("Although normally a property owner is entitled to a predeprivation hearing, where, as in this case, the state must act quickly, a meaningful postdeprivation hearing is adequate."). Absent any argument from Federal Respondents as to why a post-deprivation hearing would provide adequate process in this case, the Court is unable to conclude that a post-deprivation bond hearing, rather than immediate release, is the proper remedy for the due process violation that occurred here. "Such a hearing is no substitute for the requirement that ICE engage in a deliberative process prior to, or contemporaneous with, the initial decision to strip a person of the freedom that lies at the heart of the Due Process Clause." *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 497 (S.D.N.Y. 2025) (citation modified) (ordering a petitioner's release after concluding that a post-deprivation bond hearing would be "inadequate to address the denial of due process that [the petitioner] was entitled to in the first instance"); *see also Rodriguez-Acurio v. Almodovar*, No. 2:25-CV-6065 (NJC), 2025 WL 3314420, at *31 (E.D.N.Y. Nov. 28, 2025) ("[A] post-deprivation bond hearing before a DHS officer or even an immigration judge would provide no genuine opportunity to relief because the detention without adequate pre-deprivation procedures has already been carried out.").

EAJA's broad language to unambiguously authorize fees in habeas actions challenging immigration detention."). "Under [the] EAJA, a fee award is required if: (1) plaintiff is a 'prevailing party'; (2) the position of the United States was not 'substantially justified'; and (3) there are no special circumstances that make an award of fees unjust." *Hackett v. Barnhart*, 475 F.3d 1166, 1172 (10th Cir. 2007) (quoting 28 U.S.C. § 2412(d)(1)(A)). J-E-R-P- must "within thirty days of final judgment in the action, submit to the court an application for fees and other expenses," and demonstrate that "the position of the United States was not substantially justified."[7] § 2412(d)(1)(B). Respondents must then justify their position. *See Hackett*, 475 F.3d at 1170.

It is hereby ordered:

1. Respondents must immediately release (no later than twenty-four hours from this Order's filing) J-E-R-P- from custody, subject to the conditions of his conditional parole.

2. Upon his release, Respondents must return all of his property, including any identification documentation, that was in his possession when he was detained. Respondents must also promptly inform J-E-R-P-'s counsel of when and where he will be released.

3. Respondents must file a status report within three business days of this Order's filing to certify their compliance. The status report shall state when and where J-E-R-P- was released.

4. Unless Federal Respondents detain J-E-R-P- to effectuate an administratively final removal order, *see* 8 U.S.C. § 1231(a), they may not re-detain J-E-R-P- without conducting a pre-deprivation hearing before a neutral immigration judge during

---

[7] The Court intends to enter a final judgment following receipt of Respondents' status report.

which Respondents must show by clear and convincing evidence that J-E-R-P- is a flight risk or a danger to the community, and that no conditions other than his detention would be sufficient to alleviate such concerns.[8] Federal Respondents must notify J-E-R-P- seven days in advance of any such hearing.

5. J-E-R-P- shall promptly report to the Court any failure on Respondents' part to comply with this Order.

It is so ordered.

UNITED STATES DISTRICT JUDGE
MATTHEW L. GARCIA

---

[8] *See Velasquez Salazar v. Dedos*, 806 F. Supp. 3d 1231, 1240-46 (D.N.M. 2025) (concluding that, where the petitioner had "been unlawfully detained without due process in violation of his constitutional rights[,]" the appropriate remedy was "shifting the burden to the Government to prove, by clear and convincing evidence, that [the p]etitioner is at risk of flight and/or a danger to the community such that continued detention is necessary").

8